# UNITED STATES DISTRICT COURT

### for the

### Middle District of North Carolina

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with Instagram account<br>"_762Spinnn_" that is stored at a premises controlled by<br>Meta Platforms, Inc. | )<br>)<br>)<br>)<br>)<br>)    Case No. 1:23MJ *432* |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the     Northern     District of     California     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

  ☑ evidence of a crime;

  ☑ contraband, fruits of crime, or other items illegally possessed;

  ☑ property designed for use, intended for use, or used in committing a crime;

  ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(o) | Possession of a machinegun. |
| 18 U.S.C. § 924(c) | Firearm in Furtherance of Drug Trafficking |
| 21 U.S.C. § 841 | Possession with Intent to Distribute Narcotics |

The application is based on these facts:

See Affidavit of Task Force Officer Eli VanKuren

  ☑ Continued on the attached sheet.

  ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ Eli VanKuren
*Applicant's signature*

Eli VanKuren, Task Force Officer, ATF
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date:   10/13/2023

*Judge's signature*

City and state:   Winston-Salem, North Carolina

Joi Elizabeth Peake, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT

Your Affiant, Eli W. VanKuren, being duly sworn according to law, deposes and states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     Your Affiant is a Police Officer for the Winston-Salem Police Department (WSPD) and has been so employed since August 2015. Your Affiant is a graduate of the North Carolina Basic Law Enforcement Training taught by the Winston-Salem Police Department. Your Affiant is also duly sworn as a Task Force Officer for Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Your Affiant holds a bachelor's degree in Psychology from Harding University. During your Affiant's career in Law Enforcement, your Affiant has participated in multiple advanced training including the North Carolina Police Law Institute, Basic Gang Investigations, Violent Criminal Apprehension Techniques, Narcotics and Interdiction techniques, and Basic Cell Phone Investigations among others.

2.     As a Federal Task Force Officer, your Affiant is authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3.     Your Affiant has conducted and assisted with numerous investigations involving the commission of violent crimes, such as shootings, aggravated assaults, robberies, etc. Through instruction, training, experience,

participation in investigations, and the exchange of information with other law enforcement agents and officers, your Affiant has become familiar with the manner in which people commit violent acts and the methods, language, and terms that are used to further their criminal activities.

4.      Your Affiant has participated in a number of firearms trafficking, manufacturing, and illegal possession cases. Your Affiant's training and experience in the investigation of the illegal possession and trafficking of firearms has provided your Affiant with information concerning the normal patterns and procedures through which individuals acquire, store, maintain, and/or manufacture firearms. Your Affiant has had discussions with senior ATF agents with sufficient experience and/or expertise in conducting investigations related to individuals who unlawfully possess and traffic in firearms. As a result of your Affiant's own personal experiences, the training your Affiant has received, and the information that your Affiant has obtained from working with experienced ATF agents, your Affiant is familiar with violations of Federal Firearms Laws.

5.      Your Affiant has participated in a number of narcotics trafficking and possession cases. My training and experience in the investigation of the illegal possession and trafficking of narcotics has provided me with information concerning the normal patterns and procedures through which individuals acquire, store, maintain, and/or manufacture narcotics. Through instruction,

2

training, experience, participation in investigations, and the exchange of information with other law enforcement agents and officers, your Affiant has become familiar with the manner in which people use and distribute narcotics and the methods, language, and terms that are used to further their criminal activities.

6.     Based on your Affiant's training and experience, your Affiant knows social media websites, such as Instagram, are regularly used by criminal gang members and other individuals to arrange, communicate, and coordinate with coconspirators to commit crimes of violence, drug trafficking and distribution crimes, and other criminal activities in furtherance of their status and membership in the gang. Your Affiant knows this communication can occur through many methods, such as Instagram direct message, or posting photographs, and messages on their own accounts or the accounts of coconspirators.   Additionally, your Affiant knows through training and experience, individuals involved in the unlawful distribution of controlled substances regularly employ Instagram to coordinate illegal drug transactions, as well as take photographs of illegal drug sales. Similarly, your Affiant knows that individuals who illegally possess firearms often use features of social media and other networking platforms, such as Instagram, to purchase and obtain firearms, firearm accessories and Machine Gun Conversion Devices because they cannot complete the transaction legally. Your Affiant knows that

3

these same individuals often take photographs of the illegally acquired/possessed firearms and post those images on social media sites, to include Instagram.

## PROBABLE CAUSE

### A.  Background Regarding Instagram

7.  From your Affiant's review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," your Affiant is aware of the following about Instagram and about the information collected and retained by Instagram.

8.  Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

9.  Instagram permits users to post photos and videos to their profiles on Instagram and otherwise share photos and videos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When a user posts or shares a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo

4

(e.g., a user may add the tag #vw so that others interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos and videos.

10. Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

11. Instagram asks users to provide basic identity and contact information upon registration and allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

12. Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. "Friends" on Instagram may come from either contact lists

5

maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

13.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block them, which prevents the blocked user from following that user.

14.     Instagram allows users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

15.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

16.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

17.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web request, any Internet Protocol ("IP") address associated with such request, the type of

6

browser used, any referring/exit web pages and associated URLs, the pages viewed, the dates and times of access, and other information.

18.    Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram.  For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

19.    Instagram also collects information on the particular devices used to access Instagram.  In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

20.    Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo, and which may include latitude and longitude information, comments on photos, and other information.

21.    Instagram also may communicate with the user, by email or otherwise.  Instagram collects and maintains copies of communications between Instagram and the user.

7

22.     On or about October 11, 2023, ATF and WSPD served Instagram with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Instagram to preserve all information associated with the Subject Account.

23.     As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In your Affiants training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the

8

account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement). It may show communication between conspirators discussing the planning and organizing of crimes or discussion about past crimes.

24.     Based on the information above, the computers of Instagram are likely to contain material described above with respect to the Subject Accounts, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to

9

access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## B.  PROBABLE CAUSE

25.  On October 11, 2023 WSPD Gang Officers Teague and Estela observed a blue in color Dodge Charger bearing what appeared to be a fictious 30-day temporary registration plate. Based on the violation of North Carolina General Statue 20-111 the officers conducted a traffic stop of the vehicle.

26.  When officers activated their red/blue lights the vehicle fled and attempted to evade law enforcement by crossing the double yellow lines in the roadway driving into on-coming traffic. The Dodge Charger collided with a tractor trailer and became disabled, at which time the driver fled from the vehicle. As the driver fled, Officer Teague detained the passenger who was identified as Mr. Cortez BARR.

27.  Officer Estela pursued the driver who ran through a Taco Bell parking lot and behind several houses. As the driver fled additional officers saturated the area and a K9 was requested to track the suspect. The K9 officer located Mr. Amari HAIRSTON under a shed of a business located near 3810 Leo Street. HAIRSTON was identified as the driver of the wrecked Dodge Charger and the person who fled from Officer Estela.

28.  The Dodge Charger HAIRSTON was operating was determined to be stolen from Charlotte, North Carolina on September 3, 2023. At the time of

10

the theft the vehicle contained three firearms, none of which have been recovered.

29.    In a search of the vehicle officers located a green Apple iPhone in a black case in the driver's floorboard. Between the case and the phone HAIRSTON's North Carolina ID was located. Officers also recovered approximately 50 grams marijuana, 29 Xanax pills, and 16 Blue pills marked with "M30" in a "Backwoods" cross body bag near where the cell phone was located. Based on the drug amounts as well as the variety of drugs your affiant believes HARISTON intended to sell these substances.

30.    Based on several previous investigation involving similar pills stamped "M30" your affiant suspects these pills to be fentanyl pills but a lab determination is pending.

31.    Additionally, officers recovered a Glock 23 (S/N: BXSG711) from the driver's floorboard area. This firearm has an aftermarket 3D printed backplate which would allow the firearm to function as a machine gun. This device is also referred to as a Machine Gun Conversion Device or a "Switch". The serial number of this firearm does not match those reported during the Charlotte, NC auto theft referenced in paragraph 28 above.

32.    Following the incident an Instagram account was located with the account name "_762spinnn_" (**TARGET ACCOUNT**). Using the "story" feature of Instagram HAIRSTON is seen holding what appears to be the same

11

firearm recovered from the vehicle. In another segment of the story from the **TARGET ACCOUNT** the firearm can be seen in HAIRSTON's waistband as seen below:



33.     Additionally, the narcotics mentioned in paragraph 29 of this affidavit were located in a bag similar to what HAIRSTON is seen wearing in the photograph above.

34.     Below are photos of the firearm recovered:



35.  Additionally in the Instagram "story" on the **TARGET ACCOUNT** a video of the driver's foot is seen sitting on the driver's seat, as evidence by the gas and brake pedal long with the floor mats for a Dodge Charge SCAT Package. Seen Blow:

13



36. Additionally in the above photo in the top left corner it references "zaza" which I know through my training and experience to be a slang term for marijuana. Based on your affiants training and experience he knows cell phones and social media are often used to advertise the possession of narcotics (Marijuana and prescriptions pills as indicated by the pill bottle).

37. The floor mat from the Charger that HAIRSTON fled from is similar to the floor mat depicted in the Instagram "story" referenced in paragraph 35:



38.　HAIRSTON was charged with Flee to Elude Arrest (NC GS 20-141.5(B), Possession Stolen Motor Vehicle (NC GS 14-71.2), PWISD Schedule IV (NC GS 90-95(A)(1)), PWISD Schedule II (NC GS 90-95(A)(1)), PWISD Marijuana (NC GS 90-95(A)(1)), Possession Weapon of Mass Destruction (NC GS 14-288.8), Fictious/Altered Title/Registration Card (NC HS 20-111(2)), Resist/Delay/Obstruct (NC GS 14-223), and Carrying a Concealed Gun (NC GS 14-269(A1)).

39.　26.　Machine guns are required to be registered and placed on the National Firearms Registry. A query was conducted on HAIRSTON and the Glock 23 (S/N: BXSG711) through the National Firearms Registry which

resulted in not locating either, the firearm or any registration under HAIRSTON's name.

40.    WSPD test fired the Glock 23 (S/N BXSG711) so it could be entered into the National Integrated Ballistics Information Network (NIBIN.) During the test fire process two live rounds were placed in the magazine and with a single trigger pull the firearm discharged both rounds.

41.    On October 12, 2023 your affiant located a jail call made by HAIRTSON to a female (743-XXX-XXXX). During the phone call HAIRSTON instructed the female to login to his Instagram account and provided the user name of "_762Spinnn_" (**TARGET ACCOUNT**).    Thus, confirming the **TARGET ACCOUNT** to be HAIRSTON's.

42.    During another call (336-XXX-XXXX) HAIRSTON admitted to driving seeing the "red and blues" lights and subsequently crashing into the 18-wheeler. In this same call HAIRSTON lists off the charges he was charged with at which point a male on the call asks "they hit you with no god damn burrrr" The sound the male caller made is a common sound individuals make referring to a discharge of a firearm specifically a fully automatic firearm.

## CONCLUSION

43.    In conclusion, Affiant knows from training and experience, individuals who regularly possess narcotics, firearms and machinegun conversion devices often employ social media platforms to obtain and sell

16

narcotics and firearms, as well as machinegun conversion devices. Affiant also knows that such individuals employ the messaging features of social media sites, such as Instagram's Direct Message, to communicate discretely with coconspirators regarding their illicit conduct. Affiant also knows through training, experience, and the facts presented above, individuals that illegally possess narcotics and firearms with machinegun conversion devices regularly house photographs, videos, and additional media evidence relating to their offense on their respective social media accounts.

44. Furthermore, due to the to the information above, to include that the user of the "_762spinnn_" Instagram account employed the subject account to display the firearm and vehicle, Affiant believes additional evidence relating to the offenses listed in attachment B of this warrant will be housed in the aforementioned account.

Respectfully submitted,

/S/ Eli Van Kuren
Task Force Officer
BATF

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this affidavit.

This 13 day of October, 2023.

The Honorable Joi E. Peake
United States Magistrate Judge

17

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Instagram account "_762Spinnn_" (active on, but not limited to, October 11, 2023), that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

## Particular Things to be Seized

## I. Information to be disclosed by Meta Platforms, Inc. ("Meta")

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or other information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on October 09, 2023 (Meta Case Number 8161952 and 8161374), Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A. All business records and subscriber information, in any form kept, pertaining to the account, including:

   1. Identity and contact information (past and current), including full name, email addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

   2. All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about

19

connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3. Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4. Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5. All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6. Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, September 3, 2023, to October 11, 2023;

7. Privacy and account settings, including change history; and

8. Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

B. All content (whether created, uploaded, or shared by or with the account), records, and other information relating to videos

20

(including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, September 3, 2023, to October 11, 2023;

C.  All content, records, and other information relating to communications sent from or received by the account September 3, 2023, to October 11, 2023, including but not limited to:

   1.  The content of all communications sent from or received by the account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

   2.  All records and other information about direct, group, and disappearing messages sent from or received by the account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

   3.  All records and other information about group conversations and video chats, including dates and times, durations,

invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.     All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the account and other Instagram users September 3, 2023, to October 11, 2023, including but not limited to:

1.     Interactions by other Instagram users with the account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.     All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.     All contacts and related sync information; and

4.     All associated logs and metadata;

E.     All records of searches performed by the account September 3, 2023, to October 11, 2023, and

F.     All location information, including location history, login activity, information geotags, and related metadata September 3, 2023, to October 11, 2023.

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. §§ 922(O), 18 U.S.C. §§ 924(c), and 21 U.S.C. §§ 841 those violations involving AMARI HAIRSTON and occurring on or about October 11, 2023, for each account or identifier listed on Attachment A, in the form of the following:

A.    Records and information revealing, referencing, or constituting the manufacture, possession, and sale of narcotics and firearms, specifically machineguns;

B.    Records and information revealing or referencing the proceeds of narcotics and firearm sales;

C.    Records and information revealing or referencing co-conspirators and customers; and

D.    The identity of the person(s) who created or used the account, including records that help reveal the whereabouts of such person(s).

24

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____ , attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Meta Platforms, Inc. ("Meta"), and my title is _____ . I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Meta. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)].** I further state that:

a.   all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Meta, and they were made by Meta as a regular practice; and

b.   such records were generated by Meta's electronic process or system that produces an accurate result, to wit:

25

c.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Meta in a manner to ensure that they are true duplicates of the original records; and

d.    the process or system is regularly verified by Meta, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____   _____
Date                              Signature